(C. D. 700)

GLOBE SHIPPING CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 31, 1942)

*Puckhafer, Rode & Rode* (*John D. Rode* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation described on the invoice as "Cold rolled Steel Sheets lacquered one side, one colour." Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. It is claimed that said merchandise is properly dutiable at the appropriate rate depending upon its value under the *eo nomine* provision in paragraph 304 of said act for steel sheets or plates.

At the first hearing held at New York on January 12, 1942, the plaintiff offered in evidence the testimony of Walter Richard Geisler, the ultimate consignee and the real importer herein, the Globe Shipping Co., Inc., being the customs broker. He testified that he had been engaged in importing steel and textiles into the United States since 1920; that since 1936 he had imported plain steel sheets precisely similar to the instant merchandise, a sample of which was admitted in evidence as exhibit 1; that said exhibit 1 was cut from one of the original sheets, the dimensions of which were 21 by 30 inches; that the term "one colour" referred to in the invoice means one plain color; that he had sold merchandise like exhibit 1 as steel sheets; that he considered exhibit 1 to be a sheet; that in his opinion a sheet was a plain, flat piece of metal or paper, more or less rectangular in shape; that he had seen sheets like exhibit 1 used for making compacts; that in its imported condition merchandise like exhibit 1 was not dedicated to any particular use; that certain metal, shallow disks, and rings admitted in evidence as collective illustrative exhibit A were stamped out of sheets like exhibit 1; that the witness had obtained the articles in collective illustrative exhibit A from the manufacturer who had received the involved sheets herein; that in his opinion the fact that

exhibit 1 was lacquered on one side did not remove it from the class of articles known as sheets; and that the lacquered sheets cost about 3 or 4 per centum more than the plain or unlacquered sheets.

. At this juncture, it was stipulated by and between counsel for the respective parties in open court that with reference to paragraph 307, the merchandise at bar is thinner than $^{109}/_{1000}$ inch; that with reference to paragraph 308, the merchandise is not sheets of iron or steel, common or black; that with reference to paragraph 309, the merchandise is not galvanized or coated with zinc, spelter, or other metals, or any alloy of those metals; that no layers of other metal or metals are imposed upon the merchandise by forging, hammering, rolling, or welding; that the merchandise is not thermostatic metal; that the merchandise is not polished, planished, or glanced; that the merchandise has not been pickled or cleaned; that the merchandise is not cold-rolled smoothed only, nor polished; and that with reference to paragraph 310, it is agreed that the merchandise is not commercially known as tin plates, terneplates, and taggers tin.

Counsel then agreed that exhibit 1 be referred to the Government analyst to determine the following facts: Whether or not the merchandise contains more than $\frac{1}{10}$ of 1 per centum of vanadium; more than $\frac{2}{10}$ of 1 per centum of tungsten, molybdenum, or chromium; more than $\frac{6}{10}$ of 1 per centum of nickel, cobalt, or any other metallic element used in alloying steel or iron; and whether or not it contains more than 50 per centum of tungsten, tungsten carbide, molybdenum, molybdenum carbide, or combinations thereof.

The case was then continued to the February term.

At the second hearing, held at New York on February 9, 1942, counsel for the plaintiff offered the report of the United States customs laboratory and the same was admitted in evidence as exhibit 2, and thereupon the case was continued to the March term. So far as here pertinent this report reads as follows:

> The sample of sheet steel contains less than 0.1% of vanadium; less than 0.2% of tungsten, molybdenum or chromium; less than 0.6% of nickel, cobalt or other metallic elements used in alloying steel; and less than 50% of tungsten, tungsten carbide, molybdenum, molybdenum carbide or combinations thereof.

At the third hearing, held at New York on March 9, 1942, the Government offered in evidence the testimony of two witnesses. The first, Arthur Cohen, a partner in the firm known as Metal Purchasing Co. at 551 West 30th Street, New York City, testified that for 17 years he had bought and sold steel plates of a size 21 by 30 inches, which was a standard size; that he was thoroughly familiar with merchandise like exhibit 1; that if a customer ordered a steel plate 21 by 30 inches he would not sell an article like exhibit 1 for the reason that said exhibit 1 has a blue coating, and that the witness

would have to add 25 per centum to the price of the plain sheet to cover the coating.

The Government's second witness, Raymond I. Dawson, vice president and general manager of Metal Litho Corporation, testified that he had been engaged in lithographing and coating on tin plate and tin mill products generally, black plate particularly, for the last 26 years; that he was familiar with merchandise like exhibit 1 which he described as tin mill black plate, coated blue on one side; that his company received the metal plate plain on both sides from either jobbers or tin plate mills and then roller-coated the enamel on one side or both sides according to the will of the customers; that as a result of his 26 years of experience the coating on exhibit 1 must have been applied by a roller which was the method which he used in applying a coating, and that from his experience he could tell that the coating had been applied by rolling.

Upon this record we find the following facts:

1. That the involved merchandise consists of steel sheets lacquered on one side with a single color.

2. That the fact that said sheets were lacquered on one side increases the value thereof at least from 3 to 4 per centum.

3. Although lacquered the merchandise is sold as steel sheets.

4. After importation they are used in the manufacture of various articles and in their imported condition are not dedicated to any particular use.

5. That the sheets in question are thinner than $^{109}/_{1000}$ inch in thickness.

In the case of *John A. Steer & Co.* v. *United States*, T. D. 44041, 57 Treas. Dec. 781, this court held certain galvanized steel strips to be dutiable as steel strips, and in the case of *Ad M. Schmid & Co.* v. *United States*, T. D. 47722, 67 Treas. Dec. 870, this court held certain nickel-plated steel strips to be properly classified as steel strips. In each of these decisions we held that the case of *Hirsch & Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 82, T. D. 33365, cited by counsel for the Government in his brief filed herein, did not apply.

In the case of *Amerlux Steel Corp.* v. *United States*, 18 C. C. P. A. 449, T. D. 44700, the Court of Customs and Patent Appeals held certain checkered, or raised diamond, steel plates, chiefly used as flooring in buildings, boiler rooms, and engine rooms, and cut, generally, to a size, after importation, to fit the job in hand, were properly classifiable as steel plates not specially provided for under paragraph 304 of the Tariff Act of 1922, rather than as building forms or structural shapes under paragraph 312 of that act. In its decision the appellate court cited as an authority the case of *Hill* v. *Wood & Co.*, 163 Fed. 51. In our opinion the *Amerlux Steel Corp.* case, *supra*, is here controlling:

On the other hand the case of *United States* v. *Sutherland International Despatch et al.*, 21 C. C. P. A. 264, T. D. 46790, also cited by counsel for the Government, must be held inapplicable to the facts in the instant case for the reason that the appellate court stressed the circumstance that the brass channels lined with felt there before it were dedicated to a particular use, to wit, silent window channels.

Upon the established facts and the law applicable thereto, we hold the merchandise described as "Cold rolled steel Sheets lacquered one side, one colour" on the invoice accompanying the entry covered by this suit, and which was assessed with duty at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930, to be properly dutiable at the appropriate rate depending upon the value thereof under the *eo nomine* provision in paragraph 304 of said act for steel sheets or plates. The collector of customs at the port of New York will reliquidate the entry accordingly. All other claims are overruled.